# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

**EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,**

    **Plaintiff,**

**and**

**JOHN OTERO,**

    **Plaintiff-intervenor,**

**vs.**             **CIV No.   95-1199 JP/LCS**

**WAL-MART STORES, INC.,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

The subjects of this Memorandum Opinion and Order are: (1) "Defendant's Renewed

Motion for Judgment as a Matter of Law" (Doc. No. 122), filed March 7, 1997; (2) Plaintiff-in-

intervention's motion for attorney fees, expert witness fees and costs (Doc. No. 129), filed March

26, 1997; (3) "Plaintiff's Motion for Equitable Relief" (Doc. No. 136) filed April 10, 1997;

(4) Defendant's Application to Review Clerk's Order Settling Costs (Doc. No. 147), filed July 25,

1997; and (5) Plaintiff's motion for leave to supplement its response to defendant's renewed

motion for judgment as a matter of law (Doc. No. 148), filed March 31, 1998.

## BACKGROUND

The Equal Employment Opportunity Commission (EEOC) and John Otero

brought this action under the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 et seq.,

alleging that in October of 1992, during the course of an interview at a Wal-Mart store located in Las Cruces, New Mexico, the interviewer asked Mr. Otero, the interviewee, a question that was not permitted by the ADA, and claiming that Wal-Mart failed to offer a position to Mr. Otero because part of his right arm was amputated below the elbow.

The parties presented their evidence at a jury trial beginning February 19 and ending February 21, 1997.  On February 21, 1997, the jury returned a verdict in plaintiff's and plaintiff-in-intervention's favor, unanimously agreeing that: (1) Wal-Mart acted "with reckless indifference to the federally protected rights of John Otero" when Wal-Mart asked him, "What current or past medical problems might limit your ability to do a job"; (2) John Otero was disabled within the meaning of the Americans with Disabilities Act; (3) Wal-Mart denied employment to John Otero because of his disability; (4) Wal-Mart acted with malice or reckless indifference to the rights of Mr. Otero when it failed to hire him; and (5) this discrimination in failing to hire Mr. Otero caused him injury.

On February 24, 1997, I entered Judgment against Wal-Mart based on the jury's verdict awarding Mr. Otero: (1) $100,000 in punitive damages because Wal-Mart acted with reckless indifference to Mr. Otero's federally protected rights when it asked Mr. Otero the improper question; (2) $7,500 in compensatory damages on Mr. Otero's claim of disability discrimination; and (3) $50,000 in punitive damages for the unlawful discrimination.

## I.    Wal-Mart's Renewed Motion for Judgment as a Matter of Law

Defendant has moved for Judgment as a Matter of Law, or alternatively for a new trial, alleging that plaintiff and plaintiff-in-intervention failed to: (1) establish a prima facie case of discrimination;  (2) provide evidence of a discriminatory intent; and (3) prove that Wal-Mart

engaged in conduct that would support an award of punitive damages.

## DISCUSSION

**A.    Legal Standard**

Judgment as a matter of law against a party on a particular issue is appropriate when

"there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that

issue." Fed.R.Civ.Proc. 50(a).  The evidence and inferences therefrom must be construed most

favorably to the nonmoving party; [the court] may not weigh the evidence, pass on the credibility

of witnesses, or substitute [its] judgment for that of the jury.  *Magnum Foods v. Continental*

*Cas. Co.*, 36 F.3d 1491, 1503 (10th Cir.1994).  "When .... the evidence supports a reasonable

inference favorable to the jury verdict, the fact that a contrary inference may also be drawn does

not mandate the entry of [judgment notwithstanding the verdict]."  *Zuchel v. City and County of*

*Denver,* 997 F.2d 730, 741 (10th Cir. 1993) "Only when 'the evidence points but one way and is

susceptible to no reasonable inferences which may sustain the position of the party against whom

the motion is made' is [judgment notwithstanding the verdict] appropriate."  *EEOC v. University*

*of Oklahoma*, 774 F.2d 999, 1001 (10th Cir.1985) (quoting *EEOC v. Prudential Fed. Sav. &*

*Loan Ass'n*, 763 F.2d 1166, 1171 (10th Cir.1985), *cert. denied*, 475 U.S. 1120, 106 S.Ct. 1637,

90 L.Ed.2d 183 (1986)).  *See also Haines v. Fisher,* 82 F.3d 1503, 1510 (10th Cir.1996) (stating

that the United States Court of Appeals for the Tenth Circuit will "find error in the denial of [a

motion for judgment as a matter of law] only if the evidence points but one way and is susceptible

to no reasonable inferences supporting the party opposing the motion").

In the alternative, Wal-Mart moves for a new trial under Fed.R.Civ.Proc. 59.  Motions for

new trial are committed to the sound discretion of the trial court, *Deters v. Equifax Credit*

*Information Services*, 981 F.Supp. 1381, 1385 (D.Kan. 1997), and are "not regarded with favor and should only be granted with great caution." *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991). "The party seeking to set aside a jury verdict must demonstrate trial error which constitutes prejudicial error or that the verdict is not based on substantial evidence."

**B.     Analysis**

       **1.     Did Plaintiff Establish a Prima Facie Case of Discrimination**?

The jury was instructed:

> In order for the Plaintiff to establish a case of discrimination under the Americans with Disabilities Act, Plaintiff must prove all of the following:
>
> 1.     That Mr. Otero is a disabled person within the meaning of the ADA;
> 2.     That Mr. Otero was able to perform the essential functions of the job for which he applied; and
> 3.     That Wal-Mart failed to hire him because of his disability.

Jury Instruction No. 13;  Defendant's Supp'l Requested Jury Instructions, Doc. No. 103, p. 2 (citing to *MacDonald v. Delta Airlines*, 94 F.3d 1437 (10th Cir. 1996)).

In order to establish a prima facie case of discrimination under the ADA, specifically, the Tenth Circuit has reiterated the same elements.  The Tenth Circuit has stated that a plaintiff must show:

> (1) that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or without reasonable accommodation ..., he is able to perform the essential functions of the job; and (3) that the employer terminated him because of his disability.

*White v. York Intern. Corp.,* 45 F.3d 357, 360-361 (10th Cir. 1995) (citations omitted). *See also Williams v. Windall*, 79 F.3d 1003, 1005 (10th Cir. 1996) (applying the "same model" to claims arising under §501 of the Rehabilitation Act and framing the third element as "he was terminated

under circumstances which give rise to an inference that his rejection was based solely on his disability.")

Wal-Mart argues that the EEOC and Mr. Otero failed to establish a prima facie case of disability discrimination because they did not establish the first element, that Mr. Otero is disabled, and did not "provide *any* evidence that plaintiff was replaced by a non-disabled person or was treated less favorably than a non-disabled person."

(a)      *The Sufficiency of the Evidence that Mr. Otero was Disabled*[1]

The jury was instructed:

The term "disability" means: (1) A physical impairment that substantially limits one or more of the major life activities of the individual; or (2) Being regarded as having such an impairment.  John Otero need only meet one of these definitions to be disabled.

Jury Instruction No. 9.

"Substantially limits" was defined as:

(1)      Unable to perform a major life activity that the average person in the general population can perform; or

(2)      Significantly restricted as to the condition, manner or duration under which an individual can perform any major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

---

[1]It is possible that the EEOC and Mr. Otero need not establish that Mr. Otero is an "individual with a disability" to assert an action under 42 U.S.C. § 12112(d)(2)(A).  The Tenth Circuit recently determined that an employee asserting a claim under § 12112(d)(4)(A), which prohibits employers from making inquiries of employees regarding disabilities in certain circumstances, need not prove that he or she is an "individual with a disability."  *Roe v. Cheyenne Mountain Conference Resort, Inc.,* 124 F.3d 1221, 1229 (10th Cir. 1997).  However, the Tenth Circuit explicitly left open the question of whether an unsuccessful job applicant who has been subjected to a prohibited medical inquiry needs to establish whether he or she is an "individual with a disability."  *Id.* at 1229 n.5 (10th Cir. 1997).

> The following factors should be considered in determining whether
> an individual is substantially limited in any major life activity:
> (a)  The nature and severity of the impairment;
> (b)  The duration or expected duration of the impairment; and
> (c)  The permanent or long term impact, or the expected permanent of
>      long term impact resulting from the impairment.

Jury Instruction No. 10.

The jury was further instructed that the term "'major life activity' means functions such as caring for oneself, performing manual tasks, lifting, walking, seeing, hearing, speaking, breathing, learning and working."  Jury Instruction No. 11.  Wal-Mart does not argue that the jury was improperly instructed regarding these definitions, nor did Wal-Mart object to these instructions at the time of trial.

Instead, Wal-Mart contends that the EEOC and Mr. Otero "simply did not show that any major life activity of Mr. Otero's was substantially limited."  I disagree.  The EEOC and Mr. Otero presented ample evidence at trial upon which the jury could find that Mr. Otero was disabled.  They proved that Mr. Otero is substantially limited in the major life activity of performing numerous manual tasks.  For example, Mr. Otero testified that he is unable to grip with his right arm, hammer a nail, sew, button his shirt, fasten a watch buckle, cut his nails, tie a shoe, drive a standard-transmission automobile, or hold a baby in his arms while standing.  Tr. Vol. I at 23-28.  He further testified that he was able to do all of these things prior to losing his right arm and that these functions are permanently lost.  Tr. Vol. I at 28-29.

Additionally, Mr. Otero proved that he is substantially limited in his ability to lift; Mr. Otero testified that he is missing half of his right arm, wears a prosthetic device, is unable to grip, is not able to lift big, bulky boxes, and is limited in the weight and the size of objects that he can

lift. Tr. Vol. I, pp. 21, 24-25.  The Tenth Circuit has held that "lifting is a 'major life activity' and that an individual whose ability to lift is substantially impaired qualifies as a disabled person within the meaning of the ADA."  *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1172 (10th Cir. 1996).

In addition, Wal-Mart's own ADA manual cites a "missing limb" as an example of an "obvious disability."  Plf.'s Trial Exh. 7 at 17.  The jury could have reasonably concluded from this admission that Mr. Otero was a disabled individual within the meaning of the ADA.

Unquestionably, the evidence presented is susceptible to reasonable inferences which support the jury's conclusion that John Otero is a disabled individual within the meaning of the ADA.

> (b)    *Was it necessary for Mr. Otero to establish that he was replaced by a non-disabled individual or was treated less favorably than a non-disabled individual?*

Initially, it is important to note that Wal-Mart itself requested Jury Instruction 13, previously quoted, which sets forth the required elements of a plaintiff's prima facie case.  This instruction made no mention of a requirement that the EEOC or Mr. Otero establish that Mr. Otero was replaced by a non-disabled individual or was treated less favorably than a non-disabled individual.  Second, Wal-Mart made no objection to the exclusion of a specific jury instruction on this point.  Indeed, Wal-Mart did not request such an instruction.

In addition, Wal-Mart's assumption that an ADA plaintiff must prove, as an element of his prima facie case, that he was replaced by a non-disabled individual or was treated less favorably than a non-disabled individual is questionable.  Although the Tenth Circuit apparently has not considered it, the United States Court of Appeals for the Fourth Circuit has addressed

this precise issue.  The Fourth Circuit has explicitly rejected a formulation of the final prong of

the prima facie case which would require an ADA plaintiff to prove that his or her replacement

was outside the protected class.  *Ennis v. National Association of Business and Educational*

*Radio, Inc.,* 53 F.3d 55, 58 (4th Cir. 1995).  I am persuaded by the court's reasoning in *Ennis*:

> First, where disability . . . is at issue, the plaintiff in many, if not most, cases will
> be unable to determine whether a replacement employee is within or without the
> protected class, that is, whether or not that person is disabled or associates with a
> disabled person.  Under the act, even the employer is generally forbidden from
> inquiring about the disability of an employee or prospective employee, see 42
> U.S.C. § 12112(d).  Second, even if the plaintiff could obtain such information,
> requiring a showing that the replacement was outside the protected class would
> lead to the dismissal of many legitimate disability discrimination claims, since
> most replacements would fall within the broad scope of the ADA's protected
> class – the enormous number of Americans with disabilities, as defined by the Act,
> exponentially increased by those persons who are associated with individuals who
> are disabled, as so defined.

*Id.* at 58-59.

Moreover, the United States Supreme Court has held in the context of the Age

Discrimination in Employment Act, 29 U.S.C. §621 et seq., that it is unnecessary for a plaintiff

to demonstrate that he or she was replaced by someone outside of the protected class.

*O'Connor v. Consolidated Coin Caterers Corporation,* 116 S.Ct. 1307, 1310 (1996).  The

Court reasoned that the fact that an ADEA plaintiff was replaced by someone outside the

protected class "lacks probative value."  *Id.*  Similarly, the fact that Wal-Mart may have hired a

blind or a deaf person, for example, lacks probative value on the issue of whether Mr. Otero was

discriminated against because of *his* disability, the missing portion of his arm.

Finally, Wal-Mart's contention that plaintiff failed to provide evidence that Mr. Otero

was replaced by a non-disabled individual or was treated less favorably than a non-disabled

individual is incorrect.  Even if this were a requirement, sufficient evidence was presented at trial

to support a conclusion that Mr. Otero was treated less favorably than a non-disabled individual,

for this is an implicit element of the jury's conclusion that Wal-Mart discriminated against Mr.

Otero based on his disability.  Discrimination means "[d]ifferential treatment; esp., a failure to

treat all persons equally when no reasonable distinction can be found between those favored and

those not favored."  BLACK'S LAW DICTIONARY 195 (Brian Garner ed., Pocket ed. 1996).  Thus,

if the evidence presented is susceptible to an inference that Mr. Otero was discriminated against

based upon his disability, an issue which is covered in the next section of this Opinion, then it is

intuitively true that the same evidence supports the conclusion that Mr. Otero was treated less

favorably than non-disabled individuals.

### 2.    Discriminatory Intent

Although Wal-Mart contends that there was no evidence of a discriminatory intent, the

EEOC and Mr. Otero provided sufficient direct and indirect evidence from which it could be

inferred that Wal-Mart possessed a discriminatory intent.  First, the jury could have reasonably

inferred a discriminatory intent from Mr. Otero's testimony that Ms. Reyes asked four questions

to Mr. Otero about his arm, including questions about how he lost his arm, how much of his arm

he had left, and if he was able to still use his arm.  Tr. Vol. I, p. 40; Tr. Vol. II, pp. 78, 80-81.

Second, it is a reasonable inference from Mr. Otero's testimony that he took the Orion

Test (*see, e.g.,* Tr. Vol. I, p. 44).  There was evidence that Wal-Mart gives applicants the Orion

Test only when they are to be hired (Tr. Vol. I, p. 132, Tr. Vol. II, p. 153).  From this, the jury

reasonably could have inferred that the failure to hire him after he took the test was because of

his disability.

9

Third, the jury may have doubted the credibility of Ms. Reyes' and Ms. Bingham's testimony that Mr. Otero was "rude" during his interview with them at Wal-Mart.  This was the *sole* reason they gave for declining to hire Mr. Otero.  *See, e.g.,* Tr. Vol. II, pp. 88-89, 161-162. Possibly discrediting their proffered reason further was Mr. Otero's testimony that he believed that his interview went well, but that after his interview Ms. Reyes told him over the phone that no hiring decision had been made when, in fact, a number of people already had been hired.  Tr. Vol. I at 98, 116, 127-128.  The jury reasonably may have believed that Wal-Mart's explanation was a mere pretext and that the only other explanation, based upon the documents and the testimony presented at trial, was that Wal-Mart intentionally discriminated against Mr. Otero because of his amputated arm.

Wal-Mart further argues that "Defendant Wal-Mart cannot reasonably be held to have intended to discriminate when two lower level employees failed to follow Wal-Mart's policy and when there is no evidence that Defendant Wal-Mart knew or should have known that those employees would fail to follow its clearly established policy."   This is not the standard the jury was asked to apply.  The jury was instructed as follows:

> A corporation can act only through its officers and employees.  Any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is the act or omission of the company.
>
> An act of an employee is within the scope of the employment if:
>
> 2.      it was something fairly and naturally incidental to the employer's business assigned to the employee, and
> 3.      it was done while the employee was engaged in the employer's business with the view of furthering the employer's interest ...

Jury Instructions 16 & 17.  Wal-Mart did not and does not now object to these instructions.  The question before the jury was whether Ms. Reyes and Ms. Bingham committed an act of

discrimination while acting within the scope of their employment.  The jury clearly thought that they did.  Therefore, Wal-Mart can be held liable for compensatory damages based on the actions of Ms. Bingham and Ms. Reyes.

### 3.      The Award of Punitive Damages for the Disability Discrimination Claim

Regarding the $50,000 punitive damage award for discrimination, Wal-Mart only appears to argue that the award of $50,000 is improper because Ms. Reyes and Ms. Bingham were not "agents" for the purpose of awarding punitive damages.

–      *Standard*

"'Absent an award so excessive as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial, the jury's determination of the damages is considered inviolate.'"  *Fitzgerald v. Mountain States Tel. and Telegraph Co.,* 68 F.3d 1257, 1261 (10th Cir. 1995) (quoting *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1168 (10th Cir.1981)).  Damages which are "plainly excessive" may support an inference that bias, passion, or prejudice contributed to the award.  *Id.* at 1262.

–      ***Were Ms. Reyes and Ms. Bingham "agents" for the purpose of awarding punitive damages on the jury's finding of disability discrimination?***

The parties agree that the proper standard to be used in determining if an employee is an agent for the purpose of awarding punitive damages against an employer was set forth in *Fitzgerald, supra*:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
> (a) the principal or a managerial agent authorized the doing and manner of the act, or
> (b) the agent was unfit and the principal or managerial agent was reckless in employing or

11

retaining him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

68 F.3d at 1263 (adopting Restatement (Second) of Torts, §909 (1979)).[2]  The EEOC and Mr. Otero contend that punitive damages based upon the jury's finding of disability discrimination were properly awarded for two reasons: (1) Ms. Reyes and Ms. Bingham were managerial employees during the Fall of 1992 and (2) even if Ms. Reyes and Ms. Bingham were not managerial employees, Wal-Mart ratified or otherwise approved the act of discrimination.

(a)    *Were Ms. Reyes and Ms. Bingham managerial employees?*

In determining whether someone is a managerial employee, the Tenth Circuit looks at "the stature and authority of the agent to exercise control, discretion, and independent judgment over a certain area of a business with some power to set policy for the company."  *Id.* at 1263.  *See also Deters v. Equifax Credit Information Services*, 981 F.Supp. 1381, 1385 (D.Kan. 1997) (quoting same from *Fitzgerald*).   The court stated that a person with "the typical discretion of a

_____

[2]    Jury Instruction 28 was based on the holding in *Fitzgerald*.  The instruction read:

Punitive damages can properly be awarded against a company-employer, such as Wal-Mart, because of an act by an employee, if, but only if,

a.    the company-employer, itself, or a managerial employee of the company authorized the doing and manner of the act, or

b.    the employee who did the act was employed in a managerial capacity and was acting in the scope of employment, or

c.    the company-employer, itself, or a managerial employee of the company ratified or approved the act.

A person is a managerial employee if he has the stature and authority to exercise control, discretion, and independent judgment over a certain area of a business, including personnel, or has some power to set policies for the company.

12

manager" is one who has "the power to make independent decisions regarding personnel matters or [to] determine policy." *Id.* at 1264 (emphasis added).[3]

Although Wal-Mart contends that Ms. Reyes and Ms. Bingham were merely "low-level" employees,[4] the Tenth Circuit explicitly has rejected the contention that a person's position in a hierarchy of workers necessarily determines whether or not that person is a managerial employee. *Mattingly, Inc. v. Beatrice Foods Co.*, 835 F.2d 1547, 1565 (10th Cir. 1987) (citing *Eagan v. Mutual of Omaha Inc. Co.,* 620 P.2d 141, 144 (Cal. 1979)), *vacated on other grounds,* 852 F.2d 516 (10th Cir. 1987) . Instead, the court indicated that the proper inquiry focuses on the degree of discretion delegated to that person. *Id.*

It is undisputed that Wal-Mart delegated to Ms. Bingham and Ms. Reyes important discretionary functions. Both Ms. Reyes and Ms. Bingham testified that during the Fall of 1992 they had the discretion to make independent hiring decisions. Tr. Vol. II at 63-64, 142, 150; Ms. Bingham, in fact, was the Assistant Manager responsible for personnel at the Las Cruces Wal-Mart store. Tr. Vol. I at 142, 149. Ms. Reyes was the training coordinator. Tr. Vol. II at 52-53. They testified that they were the individuals who in their discretion made the decision not to recommend Mr. Otero for hire. Tr. Vol. II at 112-113.

---

[3]Wal-Mart misquoted *Fitzgerald* by substituting an "and" in place of an "or" in this important language. ("[A] 'managerial employee' must have 'the power to make independent decisions regarding personnel matters and policy decisions.' Fitzgerald, 68 F.3d at 1264 (emphasis added)." Defendant's Reply at p. 3.) Normally, I would assume this to be a typographical error. However, in this case, the "and" was underlined by Wal-Mart and formed the basis of its argument that since Ms. Bingham and Ms. Reyes did not have the power to determine policy for Wal-Mart, they were not managerial employees. This is quite disturbing.

[4]Interestingly, during the trial, while questioning Ms. Bingham, counsel for Wal-Mart referred to Ms. Bingham as a member of management. *See, e.g.,* Tr.Vol. II p. 183.

Since both New Mexico and the Tenth Circuit follow the Restatement in determining the propriety of a punitive damages award based upon the acts of an agent, it is appropriate to look at New Mexico law in this area. *See Abeita v. Northern Rio Arriba Electric Cooperative*, 946 P.2d 1108, 1119, 124 N.M. 97 (N.M. Ct. App. 1997) (stating "[t]o determine whether punitive damages can be assessed against a principal based on the conduct of an agent, New Mexico has adopted the test set forth in Restatement (Second) of Torts S 909(c) (1979) and Restatement (Second) of Agency S 217C(c) (1958)").

The New Mexico Supreme Court has noted that if corporate liability for punitive damages were to be based solely upon the behavior of the highest-level corporate managers, large corporations that routinely delegate responsibility for day-to-day employment-related decision-making responsibilities "could unfairly escape liability for punitive damages by virtue of their size." *Albuquerque Concrete v. Pan Am Services,* 118 N.M. 140, 146 (1994) (Frost, J.). If I were to adopt the position advocated by Wal-Mart, Wal-Mart would rarely, if ever, be liable for discriminatory application, interviewing and hiring practices.

As Justice Frost of the New Mexico Supreme Court stated:

Corporate liability for punitive damages should depend upon corporate responsibility for wrongdoing, not corporate ability to insulate top executives from daily, hands-on management, i.e. only through exercising the "whole executive power" of the corporation .... When a corporate agent with managerial capacity acts on behalf of the corporation, pursuant to the theoretical underpinnings of the Restatement rule of managerial capacity, his acts are the acts of the corporation; the corporation has participated.

*Id*.

Ms. Reyes and Ms. Bingham were both managerial employees, vested with the discretionary powers to review applications, to interview and to hire applicants. To hold

14

otherwise would effectively immunize Wal-Mart and other large corporations from liability for violations of anti-discrimination statutes aimed at eradicating discrimination in hiring practices.

        (b)    *Ratification*

In the alternative, the EEOC and Mr. Otero argue that Wal-Mart ratified Ms. Reyes' and Ms. Bingham's actions by failing to train them and by failing to conduct an investigation of the circumstances surrounding the interview of Mr. Otero.  I disagree with this argument.

"For ratification or approval to occur on vicarious liability, the principal must have knowledge of the facts." *Fitzgerald*, 68 F.3d at 1264.  There must be some conduct indicating assent to those known facts. *Id.* (citation omitted).

        (1)    <u>Failure to Train</u>

Ms. Reyes testified that although an ADA manual was present at the Las Cruces Wal-Mart, "there was no training" on the ADA during the time she was personnel manager.  Tr. Vol. II at 125, 137.  Ms. Bingham was responsible for training Ms. Reyes.  Although she told Ms. Reyes that "you do not discriminate," she testified that she did not train Ms. Reyes specifically about disability discrimination.  Tr. Vol II at 144.[5]

Thus, although the Las Cruces Wal-Mart store manager, Curtis Rosemond, testified during trial that his "attitude has always been and always will be we don't discriminate against anybody," Tr. Vol. II at 37, it would have been reasonable for the jury to infer that the absence of training regarding the ADA at the Las Cruces Wal-Mart was a fact known and possibly

---

[5]Ms. Bingham also testified that she told Mr. Rosemond, the store manager, the evening of Mr. Otero's interview that Ms. Reyes "panicked" during her interview of Mr. Otero, Tr. Vol. II at 177, and during Ms. Bingham's deposition she testified that she told Mr. Rosemond that Ms. Reyes "didn't know exactly how to handle herself [during Mr. Otero's interview]."  Tr.Vol.II at 177.  This portion of the deposition was read to the jury.

attributable to him as the store manager.

The relevant question now becomes, even if the jury could have inferred that Mr. Rosemond knew that Wal-Mart failed to train its personnel managers regarding the ADA, does this failure rise to the level of ratification? I find that it does not. The alleged failure to train took place *before* the discriminatory conduct occurred. It appears that no court has held in the context of any federal anti- discrimination statute that a pre-incident failure to train constitutes ratification of that incident. The concept of ratification involves post-occurrence conduct such as ignoring a problem by not training to correct misconduct once the employer learns it has occurred.

(2)   <u>Failure to Investigate</u>

The EEOC argues that Wal-Mart's failure to investigate the suspicious circumstances surrounding Mr. Otero's interview constitutes ratification of Ms. Reyes' and Ms. Bingham's acts of discrimination. Wal-Mart responds that there was no evidence that Mr. Rosemond had reason to disbelieve Ms. Reyes and Ms. Bingham's statements that Mr. Otero was not hired because of his rude attitude during the interview.

No party presents case law supporting or rejecting the proposition that a failure to investigate a possible ADA violation can constitute ratification of that violation.

There was some evidence supporting an inference that Mr. Rosemond had reason to

16

disbelieve Ms. Bingham's and Ms. Reyes' stated reason for not hiring Mr. Otero.[6]

It is questionable whether the jury reasonably could have inferred that Mr. Rosemond was on notice that Ms. Reyes and Ms. Bingham engaged in discriminatory conduct. Even if that inference is reasonable, I do not find that it rises to the level of assent or ratification of their conduct.

### 4.     The Award of Punitive Damages for the Asking of the Improper Question

Regarding the $100,000 award for the asking of the improper question, Wal-Mart presents three arguments in support of setting aside the award. First, Wal-Mart again reiterates that Ms. Reyes and Ms. Bingham were not agents of Wal-Mart for purposes of awarding punitive damages. Second, Wal-Mart argues that the issue of punitive damages for the improper inquiry should not have been submitted to the jury because there was no evidence that it caused injury. Third, Wal-Mart avers that even if the issue of punitive damages was properly before the jury, the jury's punitive damages award on that issue was excessive and in violation of the

---

[6]Ms. Bingham testified that during her "wrap up" meeting with Curtis Rosemond the evening of her and Ms. Reyes' interviews with Mr. Otero, she told Mr. Rosemond that "we had interviewed a guy that came in and he, we didn't hire him, he was very rude and I'm sure we were going to hear back on it because he didn't have an arm." Tr. Vol. II at 174. By that comment to Mr. Rosemond Ms. Bingham meant she thought that Mr. Otero was going to sue Wal-Mart for disability discrimination. Tr.Vol. II at 178. In addition, Ms. Bingham stated during trial that she did not speak to Mr. Rosemond every time she interviewed and made a decision not to hire someone. Tr.Vol.II at 192. Mr. Rosemond testified that he remembered discussing Mr. Otero's interview with Ms. Bingham and Ms. Reyes, and recalled that they told him that Mr. Otero was very, very rude. Tr.Vol. II at 31.

Due Process Clause.[7]

        (a)      *Were Ms. Reyes and Ms. Bingham "agents" for the purpose of awarding*
                       *punitive damages on the jury's finding of discrimination?*

Punitive damages based upon the improper inquiry were properly awarded, plaintiff and plaintiff-in-intervention argue, under the first part of the *Fitzgerald* analysis – Wal-Mart expressly authorized and in fact required Ms. Reyes and Ms. Bingham to ask the unlawful question. *See Fitzgerald*, 68 F.3d at 1263 (stating that "[p]unitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if (a) the principal or a managerial agent authorized the doing and manner of the act").

Wal-Mart's corporate headquarters distributed a standard form entitled the "Interview Comments Sheet" to all of its stores nationally. Tr. Vol. I at 140, 151-152. Wal-Mart's policy required interviewers to ask all of the questions contained on the Interview Comments Sheet. Tr. Vol. I at 140. As noted earlier, the sixth question on the form -- "What current or past medical problems might limit your ability to do a job?" -- is illegal under the Americans with Disabilities Act. Ms. Reyes understood that she was supposed to ask all of the questions from the Interview Comments Sheet in the same order that they appeared on the sheet. Tr. Vol. II at

---

[7]      The jury was instructed:

> If you find that John Otero should recover compensation for damages, and if you further find that the conduct of Wal-Mart was malicious or with reckless indifference to the rights of Mr. Otero, then you may award punitive damages against Wal-Mart ....
> Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.
> Reckless conduct is the intentional doing of an act with utter indifference to the consequences.

Jury Instruction 26.

59.  This Interview Comments Sheet was used during the Fall of 1992, when Mr. Otero was interviewed.  Tr. Vol. II at 60.   It was not until the end of 1992 that the form was changed.  Tr. Vol. II at 127-128.  Ms. Reyes was given no training on the types of questions which could and could not be asked during interviews.  Tr. Vol. II at 56.  All of this evidence strongly supports the conclusion that Wal-Mart authorized and in fact required the asking of the improper question, and, therefore, that Wal-Mart may be liable for punitive damages.

> (b)   *Was the punitive damages instruction regarding the improper inquiry properly submitted to the jury?*

Regarding the improper inquiry, Wal-Mart contends that the EEOC and Mr. Otero presented no evidence of an intent to discriminate, or evidence of a causal link between any violation and damage or injury to the plaintiff.

Wal-Mart relies primarily on two cases, neither of which binds this court.  First, Wal-Mart contends that *Tafoya v. Bobroff*, 865 F.Supp. 742 (D.N.M. 1994), stands for the proposition that under § 1981a(a)(2), Mr. Otero is required to prove that the improper question was asked with an intent to discriminate.  In *Tafoya,* the plaintiff alleged that he was required to take a medical examination in violation of the ADA.  Importantly, *Tafoya* addressed Title II of the ADA, which is directed at discrimination in public services, not discrimination in employment.  In addition, Title I, which addresses employment discrimination, specifically states that "discrimination" includes preemployment medical inquiries, 42 U.S.C. §12112(d)(1); Title II's definition of discrimination does not include medical examinations.

Second, Wal-Mart cites *Buchanan v. City of San Antonio*, 85 F.3d 196, 200 (5th Cir. 1996), to support the proposition that "the ADA requires a causal link between the violation and

the damages sought by the plaintiff." There, the court ruled after the close of the plaintiff's case

that the defendant violated the ADA by conducting a preemployment medical evaluation and

disclosing medical information. The jury was asked to determine whether the plaintiff had

sustained damages "from the city's violation of the ADA," but was never informed that the ADA

violations found by the trial court pertained only to the medical examination and disclosure.

Therefore, the Fifth Circuit held that "the jury was not properly instructed that it must find a

causal link between the specific ADA violations that were the basis of the directed verdict and

the injuries sustained." *Id.*

> Here, the jury was told specifically:

> The court has ruled, as a matter of law, that the question numbered 6 asked by Gloria
> Reyes from Wal-Mart's Interview Comments Sheet which reads "What current or past
> medical problems might limit your ability to do a job?" violated the Americans
> with Disabilities Act. If you find that this question was asked as a result of Wal-Mart's
> reckless indifference to the federally protected rights of John Otero, then you may award
> punitive damages to John Otero on this claim.

Additionally, the verdict form clearly separated the two different and distinct ADA claims and

the jury was given an opportunity to evaluate separately the damages related to each claim.

Finally, in this case Wal-Mart was given an opportunity to present all of its evidence regarding its

reasons for the failure to hire Mr. Otero, and the jury rejected the explanations.

> Wal-Mart further argues that the unlawful inquiry did not cause damage and that,

therefore, punitive damages were improperly awarded. I disagree.

> First, during discussions about jury instructions, as noted by the parties, I did find that

Mr. Otero had sustained nominal damages. The parties agree that nominal damages are

compensatory in nature. As long ago as 1885, the Tenth Circuit recognized that exemplary

damages may be awarded where only nominal damages are established.  *See Wilson v. Vaughn*, 23 F. 229 (10th Cir. 1885).  *See, generally, Restatement (Second) of Torts*, §908.

Second, nothing in §1981a conditions an award of punitive damages on an underlying award of compensatory damages.  "Extra-statutory requirements for recovery should not be invented."  *Timm v. Progressive Steel Treating, Inc.,* 1998 WL 89625, Doc. No. 97-2803, at *2 (7th Cir. March 4, 1998).  The United States Court of Appeals for the Seventh Circuit has repeatedly held that punitive damages are available under 42 U.S.C. § 1981a even when a jury does not assess compensatory damages.  *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995).  *See also Lebow v. American Trans Air, Inc.,* 86 f.3d 661, 669 n.11 (7th Cir. 1996) (citing *Hennessy*); *and Timm,*1998 WL 89625, Doc. No. 97-2803, at *2 (citing *Hennessy* and *Lebow* for proposition that under §1981a, punitive damages may be awarded in the absence of compensatory damages).

Third, to require serious actual injury would thwart the primary purposes of punitive damages – punishment and deterrence – and would permit a defendant to continue violating the law with impunity.   *Deters,* 981 F.Supp. at 1388 (citing *BMW of North America, Inc., v. Gore,* ___ U.S. ___, 116 S.Ct 1589, 1595, 1134 L.Ed.3d 809 (1996), to support the proposition that the "main purposes of punitive damages are to punish and deter reprehensible conduct").  Since the asking of an unlawful inquiry would rarely result in serious damage to an interviewee, a requirement of compensatory damage as a prerequisite to awarding punitive damages would render meaningless the ADA's prohibition against preemployment medical inquiries.

Wal-Mart asserts that its failure to delete the improper question from the Interview Comments Sheet was mere negligence, and negligence is not enough to support an award of

punitive damages.  Sufficient evidence was presented at trial to support the jury's conclusion that Wal-Mart acted with reckless indifference when it asked the illegal question of Mr. Otero.  Wal-Mart's failure to remove the improper question from the Interview Comments Sheet in combination with Wal-Mart's failure to educate or train its employees/managers about the Americans With Disabilities Act supports the jury's finding that Wal-Mart acted in reckless indifference to Mr. Otero's federally protected rights.

      (c)     *Was the punitive damages award for the improper inquiry excessive and in violation of the Due Process Clause?*

Wal-Mart argues that the punitive damages award on the improper inquiry was excessive and in violation of the Due Process Clause.  The United States Supreme Court recently provided guidance on this issue in *BMW of North America, Inc., v. Gore,* ___ U.S. ___, 116 S.Ct 1589, 1598-1599, 1134 L.Ed.3d 809 (1996) ("BMW").  Even more recently, in *Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634 (10th Cir. 1996) ("OXY"), the Tenth Circuit interpreted *BMW*.  In *OXY*, the Tenth Circuit gleaned from *BMW* the following standards to be applied in determining whether a punitive damages award is grossly excessive and in violation of the Due Process Clause: (1) the punitive damages award must relate to conduct occurring within the state, *Id.* at 636; (2) a defendant must receive "fair notice ... of the conduct that will subject him to punishment, *Id.*; and (3) a defendant must receive "fair notice ... of the severity of the penalty that a State may impose," *Id.*  Another factor which may be considered depending upon the circumstances of the specific case is the size of the defendant's wealth.  *Id.* at 641.

1.     <u>The punitive damages award must relate to conduct occurring within the state.</u>

This factor appears to be relevant only to state actions.  The concerns expressed in *BMW* – that a state through a punitive damages award may attempt to influence the behavior of a corporation outside of that state's borders – appear to be basically federalism concerns.  This factor is seemingly irrelevant to cases addressing purely federal matters.  *Deters*, 981 F.Supp. at 1389.

2.     <u>The defendant must be given fair notice of the conduct that will subject it to punishment</u>

The Civil Rights Act of 1991 allows compensatory and punitive damages in cases in which a defendant has "engaged in unlawful intentional discrimination ... under ... section 102 of the Americans with Disabilities Act (42 U.S.C. §12112).... "  42 U.S.C. §1981a(a)(2).  It has been clear since 1992, when the ADA went into effect, that an ADA plaintiff:

> [M]ay recover punitive damages under this section against a respondent ... if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. §1981a(b)(1).

42 U.S.C. §12112(d) states:

**(1) In general**
  The prohibition against discrimination as referred to in subsection(a) of this section shall include medical examinations and inquiries.

Congress passed the ADA in July of 1990, two years prior to its effective date in July of 1992.  Wal-Mart was alerted as early as 1990 to the fact that the sixth question on its Interview Comments Sheet would become illegal on the effective date of the ADA.  In anticipation of the

ADA becoming effective and this question being outlawed, Wal-Mart prepared its March 1992

ADA Manual, seven months before Mr. Otero was injured, specifically stating under the heading

"Questions Not to Ask" that "[t]he ADA prohibits asking applicants medical-related questions.

DO NOT: ... ask if an applicant has any physical or mental condition that may limit his/her ability

to perform the job." Plaintiff's Exhibit 7, p. 17 (emphasis in original). However, Wal-Mart, in

reckless disregard of Mr. Otero's rights and those of other job applicants, took no reasonable

steps to inform its personnel in Las Cruces that Wal-Mart's Interview Comments Sheet should

no longer be used in interviewing job applicants, or to train it personnel about the ADA. As a

consequence, the Wal-Mart employees who interviewed job applicants at the Las Cruces store

were still using the Interview Comments Sheet with the illegal question at the time Mr. Otero

interviewed, long after the ADA had become effective outlawing the question.

3.   <u>The defendant must be given fair notice of the severity of the<br>penalty that may be imposed</u>

Wal-Mart had fair notice of the severity of the penalty which could be imposed because

§1981a(a) and (b) explicitly gives Wal-Mart such notice. These provisions specifically notified

Wal-Mart that it could be liable for compensatory and punitive damages totaling $300,000. In

addition, in *BMW,* the Supreme Court has named three "guideposts" which may be considered

when determining whether Wal-Mart received fair notice under the third prong; these also

indicate that fair notice was provided. These factors include the degree of reprehensibility of the

defendant's conduct, the ratio or relationship between the actual harm inflicted on the plaintiff

and the punitive damages award, and civil penalties authorized or imposed for comparable

misconduct. *BMW,* 116 S.Ct at 1598-1599, 1134 L.Ed.3d 809 (1996). *See also OXY*, 101 F.3d

24

at 638 (citing *BMW* for the three "guideposts" under which to determine whether fair notice was provided under the third prong).

(a)        The Degree of Reprehensibility

In *BMW*, the Supreme Court stated, "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *BMW*, 116 S.Ct. at 1599; *and OXY*, 101 F.3d at 638 (quoting *BMW* for same proposition). When discussing the degree of reprehensibility factor, the Supreme Court noted in *BMW*, "Certainly, evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *BMW*, 116 S.Ct. at 1599.

Wal-Mart repeatedly engaged in conduct prohibited by the ADA.  As noted earlier, Ms. Reyes testified that she continued using the same Interview Comments Sheet form, after the ADA outlawed question six,  for a period of time before and after she interviewed Mr. Otero.  It was not until the end of 1992 that the form was changed.  Tr. Vol. II at 127-128.

Ms. Bingham testified that Wal-Mart interviews, "a lot, a lot of people.... A lot of people apply for Wal-Mart... [W]e get a lot of applications" and that they interview 10 to 15 people for every position," and that she has conducted "a hundred thousand" interviews.  Tr. Vol. II at 187. Mr. Rosemond, the store manager, testified that the Las Cruces Wal-Mart store receives over 56 applications per week, and thousands of applications a year.  Tr. Vol. II at 21.  He further testified that they interview approximately 40 people per week.  *Id.*

Given the extraordinarily large number of people interviewed and thereby subjected to

25

the unlawful preemployment inquiry, Wal-Mart's failure to train its employees and to change the form of the Interview Comments Sheet in spite of its knowledge of the illegality of the sixth question – and its consequent outright disregard for the law – the degree of reprehensibility factor weighs in favor of "strong medicine" in the form of a sizeable punitive damages award.

        (b)        The Ratio or Relationship Between the Actual Harm Inflicted on the Plaintiff and the Punitive Damages Award

The proper inquiry here is "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." *BMW*, 116 S.Ct. at 1602 (internal quotations and citations omitted). "A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm night have been difficult to determine." *Id.* at 1602. "In figuring harm both actual and potential harm may be considered." *OXY*, 101 F.3d at 639-640.

The actual harm to Mr. Otero, personally, in this case is hard to detect; but it is reasonable to infer from the testimony presented at trial that the asking of the question set off a chain of events that ultimately led to Wal-Mart's discriminatory conduct of refusing to hire Mr. Otero. Ms. Reyes testified that it "took [her] by surprise when he told [her that he was missing an arm]." Tr.Vol.II at 93. It was only after asking Mr. Otero the impermissible question that she noticed his missing arm. Tr. Vol. II at 92. According to Ms. Reyes' testimony, Mr. Otero became "rude" only after being asked the improper inquiry and informing her that he had a disability. Tr.Vol.II at 88-89. In fact, Ms. Reyes stated, "I guess it was after I asked him the question, he got upset because maybe I asked him the question." Tr.Vol.II at 89.

Although Wal-Mart, the EEOC and Mr. Otero agree that Mr. Otero sustained only

nominal damages when Wal-Mart asked him the improper question, the likelihood of harm was

great because of the large number of people interviewed by Wal-Mart, and the potential for

screening out disabled applicants through the disability-related questioning.  I conclude that there

is a reasonable relationship between the potential for harm and the punitive damage award of

$100,000 in this case.

> (c)     The Civil Penalties Authorized or Imposed for Comparable
>          Misconduct

This factor also directs me toward a finding that the defendant had fair notice because the

civil penalty available was $300,000 for such misconduct.  § 1981a(b)(3).  *See Deters*, 981

F.Supp. at 1390 n.9 (concluding that § 1981a(b)(3) provided fair notice to defendant of the

penalties authorized for its misconduct).

### 4.     The Extent of the Defendant's Wealth

The Supreme Court in *BMW* downplayed the defendant's wealth as a justification for

increasing punitive damages, by stating that BMW's "status as an active participant in the

national economy implicates the federal interest in preventing individual states from imposing

undue burdens on interstate commerce .... as a means of imposing its regulatory policies on the

entire Nation." *BMW*, 116 S.Ct. at 1604.  The Supreme Court's caution about basing the size of

a punitive damages award on the wealth of a defendant appears to subside when it is the federal

government that orders the damages instead of one of the states.  *See Deters*, 981 F.Supp. at

1391.

Post-*BMW*, the Tenth Circuit has held that the wealth of a defendant continues to be

relevant to the size of the punitive damages award.  *OXY*, 101 F.3d at 641.  "[W]ealth must

remain relevant, because $50,000 may be awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation." *OXY,* 101 F.3d at 641.

Testimony at trial established that Wal-Mart Stores, Inc.'s net worth in 1995 was $12,726,000,000.00 (Tr. Vol. II at 236).[8]  The jury's $100,000 punitive damage award for the unlawful inquiry represents a minuscule seventy-eight one-hundred-thousandths of one percent (.00078%) of the Defendant's net worth.

The size of the punitive damage award of $100,000 for asking the improper question does not  "jar one's constitutional sensibilities" *BMW* at 1602 n.34 (internal quotations and citations omitted), especially when considering the size of the award in light of Wal-Mart's wealth and Wal-Mart's reckless disregard for the law.

## II.    Plaintiff-in-Intervention's Motion for Attorneys Fees and Costs

During the course of this litigation, Steve Sanders served as attorney for plaintiff-in-intervention John Otero.  The parties agree that Mr. Sanders is entitled to some attorneys fees; their disagreement concerns the amount he is due.

The Americans with Disabilities Act provides for an award of reasonable attorneys fees, litigation expenses and costs to "the prevailing party, other than the United States."  42 U.S.C. § 12205.  In order to recover its attorneys fees, an intervenor must "demonstrate that it played a 'significant role' in the litigation and contributed 'nonduplicative efforts'."  *Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1581 n.25 (10th Cir. 1995) (citations omitted).

Although counsel for plaintiff-in-intervention did contribute to the litigation, the Equal

---

[8]  The Las Cruces store alone made a <u>net</u> profit of $3,000,800 in 1996.  Tr. Vol. II at 41.

Employment Opportunity Commission played the primary role; the EEOC probably could have tried the entire case on its own and achieved a similar result.  However, Mr. Sanders should be compensated for the non-duplicative work which he did.  It is appropriate to award Mr. Sanders and attorney's fee based on one half of the time he recorded on his time sheets, which is 144.48 hours of the total of 288.96 hours listed.

Mr. Sanders requests that he be compensated at the rate of $175.00 per hour.  Given that Mr. Sanders was not the counsel primarily responsible for the litigation, and that a high level of expertise on his part was unnecessary because of the expertise of the EEOC lawyers in the area of the American's with Disabilities Act, a more appropriate rate for Mr. Sanders' services in this case would be $125.00 per hour.

I find that a total fee award to Mr. Sanders of $18,060.00 is just and reasonable under the circumstances of this case.

Mr. Sanders also requests litigation "costs and expenses not included in cost bill."  I conclude that the requested costs are not reimbursable under D.N.M.L.R.-Civ. 54.2. Mr. Sanders also seeks reimbursement for the cost of the deposition fee for expert witness Janet Toney.  Under D.N.M.L.R.-Civ 54.2(b)(2) I find that this deposition was not "reasonably necessary to the litigation."

### III.    Plaintiff's Motion for Equitable Relief

After completion of the jury trial, I requested that the parties meet to attempt to reach an agreement upon a joint proposed judgment for equitable relief.  They were unable to do so.

The EEOC requests that I permanently enjoin Wal-Mart's Las Cruces store from discriminating in violation of the ADA in the future, and that I require specified ADA training

29

and a posting of a notice alerting employees to the ADA.

## A.    Legal Standard

The "powers, remedies, and procedures" of Title VII apply to the Americans with Disabilities Act according to 42 U.S.C. § 12117(a).  Under Title VII, injunctive relief is authorized when the court finds that the defendant "has intentionally engaged in or is intentionally engaging in an unlawful employment practice ...."  42 U.S.C. § 2000e-5(g).   The court may enjoin further discrimination, and may order appropriate affirmative action, including equitable relief.  Title VII, §706(g), 42 U.S.C. §2000e-5(g)(1).

In order to meet the intent requirement for injunctive relief, an ADA plaintiff need only show that the defendant intended to do the act which had discriminatory effect. *Roe v. Cheyenne Mountain Conference Resort*, 124 F.3d 1221, 1230 (1997).  "It is enough to show that the practice was followed deliberately, not accidentally." *Id.* (internal citations and quotations omitted).

In determining whether injunctive relief should be granted, "the most important factor for the district court to consider is whether the facts indicate a danger of future violations of the Act." *Roe,* 124 F.3d at 1230.  The court must determine whether "some cognizable danger of recurrent violation" exists. *Id.* (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).  The defendant bears the "heavy " burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953).

A court has "considerable discretion" in fashioning an appropriate equitable remedy based upon the particular facts of a case, *Stichting Mayflower Recreational Fonds v.*

*Newpark Resources, Inc.*, 917 F.2d 1239, 1245 (10th Cir. 1990), may rely on all the evidence adduced at trial and draw all reasonable inferences from that evidence.   *EEOC v. General Lines, Inc.*, 865 F.2d 1555, 1562 (1989).

**B.     Analysis**

Wal-Mart avers that the EEOC produced no evidence of a danger of recurrent violation of the ADA because: (1) the form containing the improper question was changed at the end of 1992 and the new questionnaire does not contain the illegal question; (2) Wal-Mart has instituted computer-based learning (CBL) and one test contained in the CBL program quizzes on the ADA and "related issues"; and (3) the concerns regarding a lack of training are misplaced.

None of the assertions by Wal-Mart satisfy a legitimate concern that, without specific training on the ADA, a similar incident will be repeated.  For example, the absence of an illegal question on the revised Interview Comments Sheet certainly does not assure that no illegal-ADA related questions will be asked of applicants at the Las Cruces store.  Personnel managers, who may have learned through experience not to ask an illegal preemployment question, may not remain in those positions, and new inexperienced personnel managers may replace them.  Given the minimal training provided by Wal-Mart prior to Mr. Otero's interview,  it is not difficult to imagine a similar incident being repeated.

Additionally, the testimony regarding Wal-Mart's computer-based learning ("CBL") program was very sketchy.   Evidence presented at trial failed to reveal how thoroughly the ADA is taught through CBL,[9] whether an examinee could pass the exam even if he or she

---

[9]Mr. Rosemond's testimony in this area was limited to the statement that one module "under the CBL people division ... which discusses how to hire people," deals with the ADA. Tr. Vol II, p. 36.

answered all of the ADA questions incorrectly,[10] who monitors the testing to guarantee that the examinee completes all of the modules, and what "related [ADA] issues" are tested.

Finally, it seems evident that the ADA Manual itself is inadequate to assuage concerns regarding a recurrence of the discriminatory behavior.  Wal-Mart itself does not appear to pay much attention to its own manual.  For example, even though Wal-Mart's ADA Manual instructs that a person with a missing limb is a person with an "obvious disability," Wal-Mart continues to assert that Mr. Otero is not a disabled individual.  In addition, testimony at trial made clear that only one copy of the manual was made available to all employees of the store, the manual is marked "Confidential," and supervisory and managerial employees are not required to read or to study it.

Nothing in the post-trial briefs or in the testimony at trial leads me to conclude that another violation of the ADA is *not* likely to recur.  Given the jury's verdict in this case, the large number of individuals interviewed weekly for positions at the Las Cruces Wal-Mart store, the apparent lack of ADA-specific training for supervisory and managerial employees, and my evaluation of the credibility of witnesses and the content of their testimony, I conclude that Wal-Mart's Las Cruces store intended to do the act which had the discriminatory effect and that there is a cognizable danger of a recurrent violation.

### IV.    Defendant's Application to Review Clerk's Order Settling Costs

Defendant requests that the issuance of the Clerk's Order Settling Costs be stayed until ruling has been entered on defendant's motion for new trial.  This request is now moot.

---

[10]Mr. Rosemond only testified that "if you answer the test scoring less than 80 points you have to take the module over again."  Tr. Vol. II, p. 36.

### V.   Plaintiff's Motion for Leave to Supplement its Response to Defendant's Renewed Motion for Judgment as a Matter of Law

Plaintiff requests leave to supplement its response to defendant's motion for judgment as a matter of law.  As I have considered the applicable law in deciding defendant's motion, plaintiff's motion is moot.

IT IS THEREFORE ORDERED that:

(1)    Wal-Mart's Motion for Judgment as a Matter of Law (Doc. No. 122) is DENIED;

(2)    Attorneys fees in the amount of $18,060.00 are awarded for legal services rendered on behalf of plaintiff-in-intervention John Otero;

(3)    Wal-Mart Stores, Inc.'s Las Cruces, New Mexico store is permanently enjoined from failing or refusing to hire a qualified individual with a disability because of his or her disability;

(4)    Wal-Mart Stores, Inc's Las Cruces, New Mexico store is permanently enjoined from making inquiries of job applicants, before a job offer is made, which are likely to elicit information about a disability, unless:

(a)    the question relates to the applicant's ability to perform job-related functions, and

(b)    the question is not phrased in terms of disability.
This includes asking the question, in any form, "What current or past medical problems might limit your ability to do a job?";

(5)    Wal-Mart must provide a copy of its Americans with Disabilities Act ("ADA")

Manual to each supervisory or managerial employee at its Las Cruces, New Mexico store within twenty days of entry of this Order;

(6)     Wal-Mart must conduct ADA compliance training for all supervisory and managerial employees at its Las Cruces, New Mexico store within sixty days of entry of this Order.  Such training must be conducted by an individual (or individuals) who is (are) qualified to train in ADA law, such as an attorney trained in ADA law; the EEOC must approve the selected individual prior to the training. The training must include training and education on the ADA's prohibition against disability discrimination and must include an explanation of the law relating to pre-employment disability-related inquiries.  Upon completion, a summary of the training given and a list of all attendees must immediately be provided to the EEOC's San Antonio District Office for review;

(7)     Wal-Mart must post a Notice to Employees (attached as Exhibit "A" to this Memorandum Opinion and Order) in a conspicuous place, such as an employee bulletin board at its Las Cruces, New Mexico store, within twenty days of entry of this Order;

(8)     Defendant's Application to Review Clerk's Order Settling Costs (Doc. No. 147) is DENIED as moot; and

(9)    Plaintiff's motion for leave to supplement its response to defendant's renewed

motion for judgment as a matter of law (Doc. No. 148) is DENIED as moot.

UNITED STATES DISTRICT COURT JUDGE

35

## <u>NOTICE TO ALL EMPLOYEES</u>

WAL-MART STORES, INC. SUPPORTS FEDERAL LAW REQUIRING THERE BE NO DISCRIMINATION AGAINST ANY APPLICANT OR EMPLOYEE BECAUSE OF HIS OR HER RACE, COLOR, SEX, NATIONAL ORIGIN, RELIGION, AGE OR DISABILITY, AND REAFFIRMS ITS COMMITMENT NOT TO DISCRIMINATE AGAINST ANY APPLICANT OR EMPLOYEE ON ANY TERM OR CONDITION OF EMPLOYMENT.

WAL-MART STORES, INC. WILL NOT DISCRIMINATE AGAINST ANY EMPLOYEE FOR OPPOSING EMPLOYMENT DISCRIMINATION OR FOR FILING OR PARTICIPATING IN A CHARGE OF EMPLOYMENT DISCRIMINATION.

IF YOU BELIEVE YOU ARE BEING DISCRIMINATED AGAINST IN ANY TERM OR CONDITION OF YOUR EMPLOYMENT, YOU ARE ENCOURAGED TO SEEK ASSISTANCE FROM WAL-MART STORES, INC.'S SUPERVISORY PERSONNEL OR THE UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, 505 MARQUETTE, NW, SUITE 900, ALBUQUERQUE, NEW MEXICO 87102-2189, (505) 248-5201.

NO RETALIATORY ACTION MAY BE TAKEN AGAINST YOU FOR SEEKING ASSISTANCE, FILING A CHARGE OR COMMUNICATING WITH THE UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.

THIS NOTICE IS POSTED TO ASSURE COMPLIANCE WITH FEDERAL LAW AND WAL-MART STORES, INC.'S POLICY.

**Exhibit A**